IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ALLEN JENKINS | ) | |
| | ) | |
| v. | ) | No. 2:13-0083 |
| | ) | Magistrate Judge Holmes |
| CAROLYN W. COLVIN | ) | |
|    Acting Commissioner of | ) | |
|    Social Security | ) | |

**M E M O R A N D U M**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), as provided under Title II and Title XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which Defendant has responded (Docket Entry No. 19). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 20). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 23).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

1

# I. INTRODUCTION

Plaintiff filed applications for a period of disability, DIB, and SSI on November 4, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 13) at 32-33.[1] He alleged a disability onset date of October 1, 2003, but later amended this to February 4, 2008. AR 10, 24, 32-35. Plaintiff asserted that he was unable to work because of depression and schizophrenia. AR 32-35.

Plaintiff's applications were denied initially and upon reconsideration. AR 32-41. Pursuant to his request for a hearing before an Administrative Law Judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ James A. Sparks on June 18, 2012. AR 21. On July 27, 2012, the ALJ denied the claim. AR 7-9. On July 18, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

# I. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on July 27, 2012. AR 7. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since October 1, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

3. The claimant has the following medically determinable impairments: probable dysthymic disorder; rule out malingering; a personality disorder; and a history of polysubstance abuse (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

***

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

***

5. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2003, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

AR 12-15.

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*,

609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R.

§§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must

come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step two of the five-step process. The ALJ found that Plaintiff met step one, but found at step two that Plaintiff was not disabled because he did not have an impairment or combination of impairments that significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months. AR 12. Because the ALJ determined that Plaintiff did not suffer from a severe impairment at step two, further review under the remaining steps was unnecessary. AR 12-15.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: (1) failing to acknowledge the existence of treatment records from a mental health center in determining that Plaintiff did not have any severe medically determinable impairments; (2) relying on the consultative examiner's opinion, where the examiner did not review the above-mentioned treatment records; and (3) failing to support his decision to deny benefits based on Plaintiff's reported daily activities. DE 18 at 5, 10, 12. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id.* at 10, 13.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). The Court addresses each of Plaintiff's assertions of error below.

### 1. Treatment records from Volunteer Behavioral Health Care.

The first two of Plaintiff's three assertions of error pertain to records documenting treatment he received from Volunteer Behavioral Health Care ("VBHC"). Plaintiff first argues

that the ALJ committed reversible error by failing to acknowledge this treatment in his opinion, suggesting that the ALJ ignored the records of this treatment in reaching his decision. DE 18 at 5. Plaintiff lists several of the complaints he reported to the staff at VBHC between May 1, 2008 and May 11, 2012, including his alleged inability to keep a job, lack of motivation, and loss of interest in pleasurable activities, as well as eight GAF scores he received from VBHC during this time period. *Id*. at 8. Relying on the Sixth Circuit's holding that an ALJ must provide good reasons for not giving weight to a treating physician's opinion pursuant to 20 C.F.R. § 404.1527(c)(2),[2] Plaintiff argues that the ALJ "implicitly excluded" these records demonstrating the severity of his condition without explaining his reasons for doing so. *Id*. at 9-10.

It is undisputed that the ALJ failed to reference the VBHC records in his opinion. However, the Court does not agree with Plaintiff's assertion that this omission violates the treating physician rule. For one, the treating physician rule requires the ALJ to provide good reasons for rejecting the opinion of a *treating source*. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (emphasis added). Plaintiff's brief cites neither a treating physician nor an opinion in the VBHC records that would be subject to such scrutiny by the ALJ. The Court notes that between May 1, 2008 and May 11, 2012, the time period cited by Plaintiff in support of his argument, Plaintiff saw a physician on just one occasion. AR 198-99. During this visit, which took place on December 4, 2009, Dr. Donald Atkinson made the following observation: "[Plaintiff] is ok for the most part but he has some motivation issues but I will not augment yet due to substance abuse history." AR 199. The only diagnoses listed in the note included "depressive disorder [not otherwise specified]," "alcohol dependence," and "polysubstance dependence." AR 199.

---

[2] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Dr. Atkinson did not, however, provide an opinion regarding any functional limitations caused by these conditions. *See Higgs*, 880 F.2d at 863 ("The mere diagnosis … says nothing about the severity of the condition."); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (internal citation omitted). Even if Dr. Atkinson had provided an opinion during this visit, the Sixth Circuit has noted that "a single visit does not constitute an ongoing treatment relationship." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006).

The majority of the VBHC records instead document Plaintiff's meetings with a case manager, many of which involve discussions about his application for disability benefits. AR 186-97, 269-80, 315. The notes documenting these encounters include some discussion of Plaintiff's symptoms, but provide no opinion as to any limiting effects of his alleged impairments. Even if these records included an opinion as to limitations caused by such impairments, the case manager does not represent an acceptable medical source whose opinion would be subject to 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), as Plaintiff alleges. While the Court does not dismiss the utility of these meetings, the ALJ's failure to address them does not violate the treating physician rule.

The remaining records from VBHC cited by Plaintiff involve medication management provided by registered nurses and medical assistants for depression, alcohol abuse, and THC abuse. AR 200, 203, 205, 281, 284. The records document consistent mood stabilization when Plaintiff took prescribed Zoloft. AR 200, 203, 281.[3] This includes a visit in March of 2011

---

[3] Plaintiff incorrectly cites a note from 2005 in describing symptoms Plaintiff allegedly showed between May 1, 2008 and May 11, 2012. DE 18 at 8, nn.23, 24, 26. This 2005 visit took place several years before February 4, 2008, the amended alleged onset of disability. AR 24. Furthermore, the 2005 note indicates that the symptoms described by Plaintiff were the result of side effects "from being off [Z]oloft for 3 ½ weeks." AR 219. These symptoms did not warrant psychiatric inpatient treatment, and the treating counselor opined that Plaintiff's symptoms would likely resolve from refill of Plaintiff's Zoloft. AR 223.

during which Plaintiff reported that he was "doing great on [Z]oloft." AR 284. Again, these records include no opinions as to any limiting effects of Plaintiff's alleged impairments by an acceptable treating source. The records instead only document Plaintiff's descriptions of his symptoms, which, as previously discussed, do not demonstrate disability. *See Hill*, *supra*.

The Court is unimpressed by the ALJ's failure to acknowledge the VBHC notes included in the administrative record. While there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion,"[4] the Court views the ALJ's disregard of these records in the opinion as a misstep in his analysis and a disservice to Plaintiff. However, the Court reluctantly finds that the omission of these records in the ALJ's opinion represents harmless error. As noted by Defendant, the VBHC records include little more than Plaintiff's own description of the symptoms he allegedly experienced. Plaintiff does not identify anyone in the VBHC records who would constitute an acceptable treating source or any opinion regarding any limiting effects of the symptoms complained of therein.

Nevertheless, Plaintiff argues that "it is crystal clear that an ALJ may not ignore medical evidence of record," and points to eight GAF scores assigned by staff at VBHC between May of 2008 and May of 2011 that ranged from 49 to 55. DE 18 at 5, 8-9. However, an ALJ is not required to discuss all of the evidence in the administrative record, and his "failure to cite specific evidence in the record does not indicate that it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). While Defendant correctly notes that discussion of the VBHC records, including the GAF scores, would have been "helpful" to the ALJ's explanation for denying Plaintiff's claim (DE 19 at 7), the Court does not find that this omission constitutes reversible

---

[4] *Adams v. Comm'r of Soc. Sec.*, No. 4:13-cv-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 9, 2014) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)).

11

error because a GAF score is not "essential" to an ALJ's determination of a claimant's RFC. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). The Sixth Circuit has held that the "failure to reference a [GAF] score is not … sufficient ground to reverse a disability determination." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (citing *Howard*, 276 F.3d at 241). Moreover, despite the potential value of a GAF score to an ALJ's analysis, the Commissioner "has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (internal citations and quotations omitted). *See also Kornecky*, 167 F.App'x at 511 ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."). Furthermore, "[e]ven assuming GAF scores are determinative," scores that are "in the high 40s to mid 50s … would not preclude [a claimant] from having the mental capacity to hold at least some jobs in the national economy." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).

The Sixth Circuit has stated that it "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion[.]" *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 545)). Plaintiff fails, however, to identify any treating physician in the VBHC records whose opinion is subject to the treating physician rule. This is significant because only an acceptable medical source can provide a medical opinion establishing the existence of a medically determinable impairment. SSR 06-03p, 2006 WL 2329939, at *2. Plaintiff has not otherwise provided any opinion from an acceptable medical source in this case. In contrast, the Commissioner provided opinions from three different licensed psychologists who opined that Plaintiff's alleged

12

impairments were not severe. AR 15. As such, even if the Court found that reversal of the Commissioner's decision was necessary based on the lack of discussion of the VBHC records, such a finding would serve no purpose because there would still be no reasonable possibility of a different outcome for Plaintiff. *See Kornecky*, 167 F. App'x at 507 ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). The Court declines to reverse the Commissioner's decision solely on such procedural grounds.

Plaintiff's additional argument that reversal is required based on Dr. Linda Blazina's failure to reference the VBHC records is similarly unpersuasive. Plaintiff argues that Dr. Blazina's report is flawed because there is no indication that she reviewed any of Plaintiff's medical records, but points to no regulation or case law requiring that a consultative examiner do so when assessing a claimant. Notably, there are regulations and court opinions relevant to this issue, but they do not sustain Plaintiff's position. Pursuant to SSR 96-6p, an ALJ cannot dismiss entire sets of medical records from a treating source before according greater weight to an opinion from a one-time examiner that does not account for all of the relevant records. *See Blakley*, 581 F.3d at 409 ("[B]ecause much of the over 300 pages of medical evidence reflects ongoing treatment and notes by [the claimant's] treating sources, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record.") (internal citations and quotations omitted). However, Plaintiff has not provided an opinion from a treating source in this case; he instead relies on notes documenting meetings with case managers and medication management visits with individuals who do not constitute acceptable treating sources. Therefore, the ALJ did not

inappropriately discount the opinion of a treating source before giving significant weight to the consultative examiner's opinion. *See Robinson v. Comm'r of Soc. Sec. Admin.*, No. 5:14-cv-291, 2015 WL 1119751, at *11 (N.D. Ohio Mar. 11, 2015) ("An ALJ's unsupported rejection of a *treating source* and reliance on non-examining sources without full access to the record appeared to be the 'overriding danger' that existed in *Blakley,* is not similarly present here.") (emphasis added) (internal citation omitted).

Although not cited in Plaintiff's brief, 20 C.F.R. § 404.1517 also requires that the government provide any consultative examiner with background information regarding the subject claimant's alleged symptoms. However, 20 C.F.R. § 404.1517 "does not place an imperative on the agency to provide a consultative examiner with a full medical record, but only explains that '[w]e will also give the examiner any necessary background information about your condition.'" *Grant v. Colvin*, No. 3:14-cv-399, 2015 WL 4713662, at *13 (E.D. Tenn. Aug. 7, 2015). Plaintiff provided Dr. Blazina with a history of his alleged condition, albeit a "questionable" history based on inconsistencies between his clinical presentation and his reported symptoms. AR 246. The ALJ also noted that he based his conclusion on Dr. Blazina's examination findings and not on her knowledge of Plaintiff's medical records. *See Grant*, 2015 WL 4713662, at *13. Plaintiff nonetheless argues that the ALJ's reliance on Dr. Blazina's opinion was error because Dr. Blazina failed to explain her "contrary conclusions," ostensibly contrasting her findings with conclusions from a medical source in the record. DE 18 at 11. However, as previously discussed, Plaintiff fails to identify any such conclusion from a medical source in the record. The Court also notes that in addition to Dr. Blazina's opinion, the ALJ gave significant weight to the opinions of Drs. Dubois and Thibodeau, both of which were based on a complete review of the medical record. AR 264, 292.

Plaintiff points to no authority requiring a consultative examiner's opinion to be rejected based on a failure to review case management notes and medication management visits. *See Grant*, 2015 WL 4713662, at *13 ("If the Court were to adopt the Plaintiff's argument, any consultative examiner should be summarily dismissed if their opinion was submitted without full review of a plaintiff's medical record or predated any treatment records. The Court is unaware of such a rule and finds no error in the weight assigned [to the consultative examiner]."). Plaintiff's argument therefore fails.

**2. The ALJ's discussion of Plaintiff's daily activities.**

Plaintiff's final assertion implicitly suggests that the ALJ erred in his credibility finding. The ALJ determined that Plaintiff's statements regarding the severity of his symptoms were "not credible to the extent they are inconsistent" with the ALJ's finding that none of Plaintiff's alleged impairments were severe in nature. AR 13. Plaintiff claims that the ALJ's conclusion that Plaintiff's daily activities were generally not the type of activities of an individual with a totally disabling condition is contrary to the evidence of record. Plaintiff even suggests that "there is literally nothing in [his] description of his daily activities to support the ALJ's decision." DE 18 at 13. The evidence of record, however, suggests otherwise.

Plaintiff relies primarily on a function report from 2010 in which he described problems with concentration, organization, and timeliness.[5] DE 18 at 12-13; AR 145-52. However, he later reported that he had no problem operating a vehicle, shopping for groceries, doing housework, and cooking meals. AR 248-49. He also stated that he was able to manage his own money and pay his own bills, and that he was "home sitting" for an individual teaching in Japan. AR 248-49. He further stated that while he does not dress or bathe on a regular basis, he does not require any

---

[5] Notably, Plaintiff was on time for his appointment with Dr. Blazina. AR 246.

help in performing such tasks. AR 26, 248. Plaintiff claims that he was once fired from a job for making inappropriate comments to a coworker (DE 18 at 12), but he points to no evidence suggesting a link between this behavior and his alleged mental impairment.

Additionally, and perhaps most significantly, Plaintiff reported in February of 2011 that he was working at Honda of Cookeville on a part-time basis. AR 248. He reported that he had been employed in this capacity for five months, meaning that he was engaged in part-time work at the time he completed the aforementioned function report, which was also after the alleged onset of disability. AR 24, 160. The ALJ determined that such employment did not represent disqualifying substantial gainful activity, but noted that it indicated an ability to do more than Plaintiff had reported he was able to do. AR 14. This also supports Dr. Blazina's suggestion of malingering by Plaintiff during his examination. AR 249. For these reasons, the Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff has, at most, mild limitation with respect to his activities of daily living. AR 14.

Plaintiff argues that the primary error in this case was the ALJ's failure to find that Plaintiff's alleged mental impairments were severe. DE 20 at 2. Plaintiff relies heavily on the ALJ's failure to discuss the VBHC records, but fails to identify any opinion in those records regarding any limiting effects of Plaintiff's alleged condition. This is significant because the regulations require the Commissioner to "evaluate every medical *opinion* we receive." 20 C.F.R. § 404.1527(c) (emphasis added). *See also* 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical *opinions* in your case record[.]") (emphasis added). Plaintiff lists in great detail many of the symptoms he reported to various staff members at VBHC, but points to no opinion from a medical provider that demonstrates any limiting effects caused by his alleged impairment. *See Davis v. Astrue*, No. 2:11-cv-00062, 2012 WL

16

2324396, at *8 (M.D. Tenn. June 19, 2012) (affirming ALJ's denial of claimant's application for DIB and SSI based on lack of notations or opinions by physicians to support claimant's alleged disability); *Barber v. Comm'r of Soc. Sec.*, No. 13-14098, 2014 WL 5307161, at *17 (E.D. Mich. Oct. 16, 2014) ("[P]laintiff points to no medical source opinions that show that the alleged symptoms amount to impairment.").

The Court reiterates that the ALJ's failure to reference the VBHC records in his opinion was imprudent. However, the Court finds that this omission in this case represents harmless error based on the lack of any opinion in the VBHC records from an acceptable treating source regarding any limitations caused by Plaintiff's alleged symptoms. While step two of the evaluation process delineated by 20 C.F.R. § 404.1520 is a *de minimis* hurdle in the disability determination process,[6] it is still the claimant's burden to prove the existence and severity of limitations caused by his impairments. *Jones*, 336 at 474. The mere diagnosis of an impairment is not enough to demonstrate disability; the claimant must also prove severity and functional impact. *Jones v. Comm'r of Soc. Sec.*, No. 13-cv-14217, 2015 WL 1004681, at *8 (E.D. Mich. Mar. 6, 2015) (citing *Foster*, 853 F.2d at 489)). *See also Krakow v. Comm'r of Soc. Sec.*, No. 13-14388, 2015 WL 1301300, at *10 (E.D. Mich. Mar. 23, 2015) ("[S]imply because [a claimant] suffers from certain conditions or carries certain diagnoses does not equate to disability[.].") In this case, Plaintiff has provided no real medical proof of any disabling impairment. The ALJ thus appropriately relied on the opinions of Dr. Blazina and two state agency psychological consultants, all of whom concluded that Plaintiff's alleged impairments were not severe. AR 15. Any error pertaining to the VBHC records is therefore harmless, as an administrative decision should not be reversed and remanded if doing so would merely be "an idle and useless

---

[6] *Higgs*, 880 F.2d at 862-63.

formality." *Collette v. Astrue*, No. 2:08-cv-085, 2009 WL 32929, at *9 (E.D. Tenn. Jan. 6, 2009) (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004)). Accordingly, the Court affirms the ALJ's decision to deny Plaintiff's application.

## IV. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 17) is DENIED.

An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge